**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RANDI SLONE,**

**Plaintiff,**

**v.**

**THE COMMUNITY ACTION COMMITTEE OF PIKE COUNTY,**

**Defendant.**

**Case Number 2:25-cv-1244**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

# OPINION AND ORDER

This matter is before the Court on Defendant The Community Action Committee of Pike County's Motion for Partial Judgment on the Pleadings. (ECF No. 16.) Plaintiff Randi Slone responded in opposition (ECF No. 19), and Defendant replied in support (ECF No. 20). For the reasons below, the Court **DENIES** Defendant's Motion for Partial Judgment on the Pleadings. (ECF No. 16.)

## BACKGROUND

Ms. Slone sues her former employer, The Community Action Committee of Pike County, bringing claims for sexual orientation discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and Chapter 4112 of the Ohio Revised Code. (ECF No. 14.) The Court summarizes the factual allegations set forth in Ms. Slone's First Amended Complaint.

Defendant owns and operates Valley View Health Centers, which provide medical and dental services. (*Id.* ¶ 7.) In May 2022, Ms. Slone began working as a Certified Nurse Practitioner at Valley View Health Center in Jackson, Ohio. (*Id.* ¶ 9.) Ms. Slone was the only homosexual practitioner in Defendant's practice. (*Id.* ¶ 31.)

In August 2024, due to an increased patient load, Ms. Slone asked to adjust her schedule for seeing patients so that she would have blocks of time before lunch and before the end of the day for charting and paperwork. (*Id.* ¶ 11.) Ms. Slone modeled her request on the schedules of other practitioners and says the other practitioners who were granted schedule adjustments are heterosexual. (*Id.* ¶¶ 12–13, 31.) Ms. Slone alleges she routinely had to stay late and work from home to finish her charting responsibilities while other heterosexual providers were allowed to adjust their schedules to incorporate additional charting time into their days. (*Id.* ¶ 16.)

Over the next three months, Ms. Slone followed up on her request and indicated that another practitioner had been allowed to use the requested schedule. (*Id.* ¶ 15.) Ms. Slone did not receive a response. (*Id.*) On November 20, 2024, Ms. Slone met with Defendant's Medical Director, Director of Primary Care, and Chief Operating Officer regarding her request and the number of "open encounters" she had due to lack of available charting time. (*Id.* ¶ 17.) Ms. Slone indicated that she was being treated differently than her heterosexual colleagues. (*Id.*)

On February 24, 2025, Defendant notified Ms. Slone that she had numerous open encounters that needed to be completed. (*Id.* ¶ 18.) The next day, Ms. Slone sent another email expressing concern about scheduling and pointing out that other heterosexual providers received the schedule Ms. Slone had been denied. (*Id.* ¶ 19.) On March 17, 2025, Defendant issued a Final Written Warning for inefficiency related to Ms. Slone's open encounters. (*Id.* ¶ 20.) Defendant indicated that all providers received thirty minutes of charting time before lunch and thirty minutes of charting time before the end of the day, but Ms. Slone alleges in her First Amended Complaint that several providers, who are heterosexual, had extended charting time. (*Id.* ¶¶ 21–22.) Ms. Slone also alleges that multiple heterosexual practitioners had numerous open encounters and did not receive any disciplinary action. (*Id.* ¶ 23.)

On March 27, 2025, Defendant informed Ms. Slone that her contract would not be renewed and would terminate effective April 30, 2025. (*Id.* ¶ 25.) In April 2025, Ms. Slone again requested that changes be made to her patient schedule and reported the differing treatment she received to Defendant's Director of Human Resources and the ethics department. (*Id.* ¶¶ 26, 28.) Defendant did not initiate an investigation and terminated Ms. Slone on April 30, 2025. (*Id.* ¶¶ 29–30.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion." *Sharaydeh v. Warren County*, 730 F. Supp. 3d 692, 695 (S.D. Ohio 2024) (Barrett, J.) (citing *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.* (quoting *Com. Money Ctr.*, 508 F.3d at 336). In ruling on a Rule 12(c) motion, "a court

considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016) (Rose, J.) (citing Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c)).

**ANALYSIS**

Defendant moved for partial judgment on the pleadings, asking the Court to dismiss Ms. Slone's retaliation claims brought under Title VII and Ohio law. (ECF No. 16.) Defendant argues Ms. Slone does not plausibly allege that she engaged in protected activity or that there was a causal connection between any protected activity and Defendant's decision not to renew her employment contract. (*Id.*) Ms. Slone disagrees with both points and characterizes Defendant's arguments as improperly requiring her to prove her claims at the pleading stage. (ECF No. 19.)

Title VII and Chapter 4112 of the Ohio Revised Code prohibit employers from retaliating against employees who oppose unlawful employment practices. 42 U.S.C. § 2000e-3(a); Ohio Rev. Code § 4112.02(I); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016). The same analysis governs retaliation claims under Title VII and Ohio law, so the Court will analyze Ms. Slone's federal and state retaliation claims together. *Braun*, 828 F.3d at 510.

"To succeed on a retaliation claim under Title VII and the Ohio Revised Code, a plaintiff must allege that (1) he engaged in a protected activity; (2) the exercise of the protected right was known to the defendant; (3) the defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Schoonover v. Hamilton County*, No. 1:22-cv-767, 2024 WL 645220, at *8 (S.D. Ohio Feb. 15, 2024) (McFarland, J.) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)). A plaintiff is not required to establish a prima facie case at the pleading stage, but the complaint must contain "sufficient facts to notify a defendant of the plaintiff's claims and

support a reasonable inference that the defendant is liable for the misconduct alleged." *Washington v. First Nat'l Bank of Pa.*, 179 F.4th 1008, 1017 (6th Cir. 2026).

The Court first considers Defendant's argument that Ms. Slone failed to allege she engaged in protected activity and then turns to Defendant's argument that Ms. Slone failed to allege causation.

## I. Protected Activity

Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); Ohio Rev. Code § 4112.02(I) (analogous provision under Ohio law). In other words, there are two types of protected activity: "participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012). Relevant here, the second type protects complaints about allegedly unlawful practices. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

Defendant argues that Ms. Slone's reports of differing treatment in April 2025 are not protected activity because they occurred after Defendant informed Ms. Slone that her contract would not be renewed on March 27, 2025. (ECF No. 16, PageID 137.) In response, Ms. Slone does not contend that her April 2025 reports are protected activity, instead arguing that Defendant's point is "moot" because she made reports of discrimination before receiving notice of the non-renewal decision, too. (ECF No. 19, PageID 156.) As such, the Court proceeds to

consider the complaints Ms. Slone made about differing treatment before the non-renewal decision.

Ms. Slone alleges she "informed Defendant that she was being treated differently than her heterosexual colleagues [on] at least three occasions between August 2024 and March 1, 202[5]." (ECF No. 14, ¶ 24.) Ms. Slone says she met with Defendant's Medical Director, Director of Primary Care, and Chief Operating Officer on November 20, 2024, and "indicated that she was being treated differently than her heterosexual colleagues, specifically Melinda Cannon." (*Id.* ¶ 17.) And, in February 2025, Ms. Slone emailed the Medical Director to point out that "other heterosexual providers adhered to the patient schedule Plaintiff requested." (*Id.* ¶ 19; ECF No. 15-2, PageID 113 (February 2025 email stating, "I have mentioned multiple times, when Melinda Cannon was here her last appointment before lunch was 10:45 and the end of the day 4:30.").)

Defendant argues these reports were generalized workplace concerns about Ms. Slone's patient schedule rather than overt opposition to discrimination. (ECF No. 16, PageID 131–35.) Accepting Ms. Slone's factual allegations as true and construing the First Amended Complaint in the light most favorable to her, the Court concludes Ms. Slone alleges protected activity. *See Washington v. Sodecia Auto.*, No. 25-1362, 2025 WL 2965835, at *3 (6th Cir. Oct. 21, 2025) (explaining that a "vague charge of discrimination" will not qualify, but a plaintiff's complaint need not be "lodged with absolute formality, clarity, or precision" to be protected under Title VII) (quoting *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021)). Ms. Slone alleges she told executives that she was being treated differently than her heterosexual colleagues on multiple occasions, and "complaining about allegedly unlawful conduct to company management is classic opposition activity." (ECF No. 14, ¶¶ 17, 19, 24); *Wasek*, 682

F.3d at 469. As such, the Court turns to Defendant's argument that Ms. Slone failed to plausibly allege causation.

## II. Causation

Defendant argues the four-month gap between Ms. Slone's November 2024 comments about differing treatment and the March 2025 non-renewal decision is too attenuated to support an inference of causation. (ECF No. 16, PageID 135–36.) While there is no "single factor that is dispositive in establishing a causal connection," whether "the defendant treated the plaintiff differently from similarly situated employees" and whether "the adverse action was taken shortly after the plaintiff's exercise of protected rights" are "relevant to causation." *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-cv-555, 2020 WL 1904726, at *8 (S.D. Ohio Apr. 17, 2020) (Cole, J.) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)).

Defendant's argument that temporal proximity cannot establish causation assumes that the relevant conduct occurred in November 2024. (ECF No. 16, PageID 135–36.) But, as discussed above, Ms. Slone alleges she "informed Defendant that she was being treated differently than her heterosexual colleagues [on] at least three occasions between August 2024 and March 1, 202[5]," including on February 25, 2025, when Ms. Slone emailed Defendant's Medical Director to point out that "other heterosexual providers adhered to the patient schedule Plaintiff requested, but that her request was denied." (ECF No. 14, ¶¶ 19, 24; ECF No. 15-2.) Defendant informed Ms. Slone of its decision not to renew her contract one month later, on March 27, 2025. (ECF No. 14, ¶ 25); *see Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283–84 (6th Cir. 2012) (two-month lapse sufficient to find a causal connection). Ms. Slone also alleges that "multiple heterosexual practitioners had numerous open encounters and did not receive any disciplinary action." (ECF No. 14, ¶ 23.) Again, construing the allegations in the

light most favorable to Ms. Slone, the First Amended Complaint contains facts from which one could reasonably infer a causal connection between Ms. Slone's protected activity and the adverse employment action taken against her.

For these reasons, the Court is not persuaded by Defendant's arguments to enter judgment on the pleading in its favor as to Ms. Slone's retaliation claims brought under Title VII and Ohio law and denies Defendant's Motion. (ECF No. 16.)

## CONCLUSION

For the reasons above, the Court **DENIES** (ECF No. 16) Defendant The Community Action Committee of Pike County's Motion for Judgment on the Pleadings.

This case remains open.

**IT IS SO ORDERED.**

**9/9/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**